In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3330

LAURA A. MAKOWSKI,

*Plaintiff-Appellant*,

*v.*

SMITHAMUNDSEN LLC,
GLEN E. AMUNDSEN AND
MICHAEL DELARGY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-06912—**John W. Darrah,** *Judge.*

ARGUED MAY 3, 2011—DECIDED NOVEMBER 9, 2011

Before ROVNER and WILLIAMS, *Circuit Judges*, and
YOUNG, *District Judge*.*

YOUNG, *District Judge.* Lisa Makowski, an employee of
SmithAmundsen, LLC ("SmithAmundsen"), took leave

---

* The Honorable Richard L. Young, Chief Judge of the United
States District Court for the Southern District of Indiana,
sitting by designation.

under the Family Medical Leave Act ("FMLA") beginning just before the birth of her child and continuing after the birth. While Makowski was on leave, her supervisors informed her that her position was eliminated as part of an organizational restructuring and terminated her employment. Makowski filed suit against SmithAmundsen, Glen E. Amundsen, and Michael DeLargy, alleging pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"); interference with Makowski's exercise of her rights under the FMLA; retaliation under the FMLA; and a violation of her right to a bonus under the FMLA. The district court granted summary judgment in favor of the defendants. On appeal, Makowski challenges an evidentiary ruling denying the admission of statements allegedly made by the Human Resources Director; the district court's failure to consider all of Makowski's additional evidence in the record; and the district court's grant of summary judgment in favor of the defendants on the pregnancy discrimination claim and FMLA interference and retaliation claims. For the reasons set forth below, we reverse.

## I. Background

Makowski was employed as Marketing Director for SmithAmundsen, a law firm, from January 17, 2005, through February 4, 2008. She reported to Glen Amundsen, Chair of the Executive Committee and Marketing Partner, and Michael DeLargy, Chief Operating Officer. During each year of Makowski's employment with

SmithAmundsen, she received an annual salary increase, as well as quarterly discretionary merit bonuses "based on individual performance and how the employee's contributions helped Defendant SmithAmundsen meet its objectives" for each quarter of Plaintiff's employment prior to beginning her leave under the FMLA.

In the summer of 2007, Makowski notified SmithAmundsen's management that she was pregnant and due in December. SmithAmundsen granted Makowski leave under the FMLA due to the pregnancy and birth. On November 5, 2007, Makowski's obstetrician placed her on bed rest for the remainder of her pregnancy as a result of a significant increase in her blood pressure. With SmithAmundsen's permission, Makowski worked from home until November 26, 2007, at which point she began FMLA leave. On December 2, 2007, Makowski gave birth.

In January 2008, the Executive Committee, comprised of Amundsen and four other men, conducted its yearly retreat to assess the overall structure of the firm and determine whether staffing changes were necessary. At this time, the Marketing Department consisted of Makowski, Marketing Director; Sarah Goddard, Marketing Project Manager; Lauren Siegel, Marketing Coordinator; and Kristi Fitzgerald, part-time Marketing Assistant. During a conversation before the retreat regarding restructuring of the Marketing Department, Amundsen told DeLargy that "[p]eople enjoyed working with [Goddard] more" and that Goddard would be a stronger lead person in the department than Makowski, which

"was really what [SmithAmundsen] needed to focus a lot on." At the retreat, the Executive Committee ratified Amundsen's recommendation to eliminate Makowski's position and continue with Goddard as the leader of the Marketing Department. The Executive Committee charged DeLargy with the task of conferring with outside labor and employment counsel regarding Makowski's firing.

In an email sent at the conclusion of the retreat from DeLargy to Molly O'Gara, Director of Human Resources, DeLargy said that Makowski "doesn't fit into our culture." As the Director of Human Resources, O'Gara by her own admission was responsible for implementing and monitoring SmithAmundsen's compliance with human resources policies, as well as monitoring the firm's compliance with anti-discrimination laws. She is consulted regularly regarding decisions to eliminate positions and terminate employees, and considers herself "the boss" with respect to human resources policies and compliance. Fittingly, DeLargy delegated to O'Gara the task of consulting with outside counsel to discuss Makowski's firing, which she did prior to Makowski's termination.

On February 4, 2008, while Makowski was on maternity leave, Amundsen and DeLargy terminated her over the telephone, explaining that her position was being eliminated as part of an organizational restructuring. That same day, O'Gara fired the IT Director, Tuan Hoang. Additionally, Amundsen sent an email to all equity and non-equity members of SmithAmundsen informing

them of the Executive Committee's decision to eliminate the IT Director and Director of Marketing positions and Hoang's and Makowski's terminations.

Later that day, Makowski came to the office to retrieve her belongings. As she was leaving, O'Gara met her in the elevator lobby. O'Gara told her that she (Makowski) "was let go because of the fact that [Makowski] was pregnant and . . . took medical leave." Furthermore, O'Gara "believed that there were [sic] a group of people that were discriminated against because they were pregnant or because they took medical leave" and specifically mentioned Carrie Von Hoff, a former associate at the firm, as one of the victims of discrimination. O'Gara also advised Makowski that "it might be a good idea to speak with a lawyer [as there] might be a possibility of a class action." Regarding Hoang, O'Gara said that "they were working to let Tuan [Hoang] go for performance-based reasons," but because Makowski was pregnant and on FMLA leave, outside counsel suggested labeling both Makowski's and Hoang's terminations as part of a reduction in force.

The day after Makowski's termination, Goddard resigned and accepted a position at another firm. Two days later, the Firm advertised for a position as Business Development and Marketing Manager, a role the Firm envisioned would have been filled by Goddard. In May 2008, the Firm rehired Goddard for the position.

Makowski filed this lawsuit on December 2, 2008, alleging violations under Title VII, as amended by the PDA, and the FMLA. The defendants moved for sum-

mary judgment on all of Makowski's claims. The district court granted the defendants' motion with respect to Makowski's termination. The court first ruled that because O'Gara's job responsibilities were not related to the decision to terminate Makowski, and because O'Gara was not involved in the decision-making process, O'Gara's statements concerning Makowski's termination were not admissible as an admission by a party-opponent. Without those statements, the court found that Makowski had no evidence of a direct connection between her protected activity and her termination; therefore, her Title VII discrimination claims and FMLA interference and retaliation claims failed under the direct method of proof.

## II.  Analysis

We review a district court's grant of summary judgment de novo, construing all facts in the light most favorable to Makowski and drawing all reasonable inferences in her favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). Summary judgment is appropriate where the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Makowski first contends that the district court erred in excluding O'Gara's statements to Makowski con-

cerning her termination and in failing to consider other evidence provided by Makowski. Second, Makowski argues that this evidence creates a genuine issue of material fact as to whether Makowski was terminated due to her pregnancy and her taking medical leave. Finally, Makowski alleges that the district court erred in failing to address her FMLA interference claim independently of her FMLA retaliation and discrimination claims.

## A. O'Gara's Statements

As we noted above, Makowski alleges that O'Gara told her that Makowski was terminated because she was pregnant and took medical leave, and informed her of the Firm's discriminatory treatment toward other pregnant employees. The district court ruled that O'Gara's statements were not admissions and excluded them as inadmissible hearsay. Makowski contends on appeal that O'Gara's statements were admissions and therefore should be admitted as evidence of discrimination. We review a district court's evidentiary ruling for abuse of discretion. *United States v. Owens*, 424 F.3d 649, 653 (7th Cir. 2005).

O'Gara's statements fall under the definition of hearsay, because they were made out of court and are being offered for their truth. *See* FED. R. EVID. 801(c). To be admissible, Makowski must establish that an exception to the hearsay rule applies or that the statements are not hearsay. *See id.* at 801(d), 803. Rule 801(d)(2)(D) of the Federal Rules of Evidence provides that "[a] statement is not hearsay if . . . the statement is offered against a

party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." The issue is whether O'Gara's statements concerned a matter within the scope of her employment.

For an employee's statement to constitute an admission, she need not have been personally involved in the disputed employment action, "but her duties must encompass some responsibility related to 'the decisionmaking process affecting the employment action.'" *Stephens v. Erickson*, 569 F.3d 779, 793 (quoting *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007)); *see also Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998). Involvement in the process leading up to the employment action at issue is enough to make an employee's statement an admission. *Simple*, 511 F.3d at 672.

In *Simple*, we agreed with the Third Circuit in finding that "'a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer, regardless of whether the declarant has any involvement in the challenged employment action.'" *Id.* (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 298 (3d Cir. 2007)). After consulting with the district manager for the region regarding the appointment of a manager at another store, the plaintiff's manager told the plaintiff that race played a factor in the district manager's decision to appoint someone other than plaintiff as manager

of the other store. *Simple*, 511 F.3d at 672. Although the plaintiff's manager was not involved in the employment action of appointing the new manager, she was involved in the process that led up to that action by virtue of the district manager's consultation with her about the appointment. *Id.* The plaintiff's manager was involved in the decisionmaking process affecting the employment action, which was enough to make her statement an admission under Rule 801(d)(2)(D). *Id.*

Like the manager in *Simple*, O'Gara's statements fit squarely within the scope of her employment. O'Gara's duties as Human Resources Director at the Firm included regular consultations regarding decisions to eliminate positions and terminate employees in order to ensure compliance with federal anti-discrimination laws, making her a part of the firing process. In Hoang's case, O'Gara actually notified him of his termination. Although O'Gara did not personally notify Makowski of her termination, she was asked to confer with outside labor and employment counsel regarding the decision to terminate Makowski. The district court believed that O'Gara's job duties and her consultation with outside counsel did not indicate any involvement by O'Gara in the decision to terminate Makowski, because the consultation occurred after the Executive Committee made the decision; however, if a final decision had been made, then why did DeLargy and O'Gara need to consult with outside counsel before taking action? As we noted in *Simple*, there is a distinction between the employment action and the decisionmaking process affecting the employment action. 511 F.3d at 672. Here, the employ-

ment action was not the decision made at the Executive Committee retreat to terminate Makowski, but rather her actual termination. While O'Gara was not involved in the employment action of Makowski's termination, she was involved in the decisionmaking process leading up to that action due to her consultation with outside counsel regarding the termination and her job duties, which include ensuring the Firm's compliance with federal anti-discrimination laws. Accordingly, O'Gara's statements fall within the scope of her employment and thus are admissible as nonhearsay under Rule 801(d)(2)(D).

## B.  Pregnancy Discrimination Claim

Next, Makowski argues that the district court erred in granting summary judgment for the defendants on her pregnancy discrimination claim. The PDA amends the definition of gender-based discrimination in Title VII to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Like other Title VII claims, a plaintiff may prove discrimination through either the direct or indirect methods. *Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007). To survive summary judgment under the direct method, a plaintiff must produce "'sufficient evidence, either direct or circumstantial, to create a triable issue as to whether pregnancy was a motivating factor in her discharge.'" *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1005 (7th Cir. 2000) (quoting *Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 525 (7th Cir.

1998)). Direct evidence is evidence that would prove discriminatory intent without reliance on inference or presumption. *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 599 (7th Cir. 2003). A plaintiff may also construct a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Phelan v. Cook Cnty.*, 463 F.3d 773 (7th Cir. 2006) (internal citation and quotation marks omitted).

O'Gara's alleged statements to Makowski, which are now admitted under Rule 801(d)(2)(D), provide direct evidence that pregnancy was a motivating factor in Makowski's discharge. Although O'Gara denies having made the alleged statements, whether or not she made such admissions is a question for the jury. Furthermore, Makowski presented additional circumstantial evidence that the district court inexplicably failed to address, such as suspicious timing, behavior toward other employees in the protected group, ambiguous oral and written statements, better treatment of similarly situated employees outside the protected class, and evidence that Makowski was qualified for her job but failed to receive the desired treatment.[1] However, even with the

---

[1] The district court denied a motion by the defendants to strike Makowski's additional facts due to an alleged violation of the local rules, but acknowledged that it would consider the substance of the motion in ruling on the pending motion for summary judgment. While the district court in fact did not consider Makowski's additional facts, it provided no explana-

(continued...)

exclusion of the circumstantial evidence, O'Gara's statements alone are direct evidence of a discriminatory intent. Accordingly, the district court's grant of summary judgment in favor of the defendants on Makowski's pregnancy discrimination claim is reversed.

## C. FMLA Retaliation Claim

Makowski also argues that the district court erred in dismissing her FMLA retaliation claim on summary judgment. Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Similar to a pregnancy discrimination claim, "[i]n asserting a charge of retaliation under the FMLA, a plaintiff may proceed under the direct or indirect methods of proof." *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006)). To establish an FMLA retaliation claim under the direct method, Makowski "must present evidence of (1) a statutorily protected activity; (2) a materi-

---

[1] (...continued)

tion for their exclusion. For whatever reason the district court disregarded Makowski's facts, the court should have addressed this issue in its opinion. Ultimately, the exclusion of Makowski's additional facts is irrelevant for the purposes of this appeal; however, in the future, the district court should provide an explanation when striking facts.

ally adverse action taken by the employer; and (3) a causal connection between the two." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008).

As the district court noted, the parties do not dispute that Makowski meets the first and second requirements of the direct method. Regarding the third requirement, the district court found that without O'Gara's statements, Makowski has no evidence of a direct connection between her statutorily protected activity and her termination; however, O'Gara's statements are now admitted and provide the necessary causal connection. Makowski has sufficiently asserted a charge of retaliation under the FMLA; therefore, summary judgment for the defendants on Makowski's FMLA retaliation claim is reversed.

### D.  FMLA Interference Claim

Finally, Makowski claims that the district court erred in failing to address her FMLA interference claim independently of her claim for retaliation and discrimination. We need not address this issue, because the admission of O'Gara's statements also requires the reversal of the district court's grant of summary judgment for the defendants on Makowski's FMLA interference claim.

Under the FMLA, an employer must not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. 29 U.S.C. § 2615(a)(1). An employee on FMLA leave has the right to be restored to the same or an equivalent position that she had before

she took leave. 29 U.S.C. § 2612. To prevail on an FMLA interference claim, a plaintiff must establish that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010) (citing *Burnett*, 472 F.3d at 477). The parties do not dispute Makowski's satisfaction of the first four requirements.

The remaining issue is whether a jury could find that the defendants denied Makowski her right to reinstatement, an FMLA benefit to which she was entitled, because she took FMLA leave. *See Goelzer*, 604 F.3d at 993. Again, O'Gara's previously excluded statements to Makowski that Makowski was let go because she took medical leave provide a possible explanation for the termination decision that a jury could very well choose to believe. Because Makowski has satisfied the requirements of an FMLA interference claim, summary judgment on this claim is not appropriate and therefore its grant in favor of the defendants is reversed.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's evidentiary ruling regarding O'Gara's statements, REVERSE the grant of summary judgment in favor of the defendants on Makowski's PDA, FMLA retaliation, and

FMLA interference claims, and REMAND for proceedings consistent with this opinion.