**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2016
Decided December 13, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1783

| | |
|---|---|
| CRAIG L. HARRIS,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>OFFICE OF THE CHIEF JUDGE OF<br>THE CIRCUIT COURT OF COOK<br>COUNTY, *et al.,*<br>    *Defendants-Appellees.* | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division.<br><br>No. 14 C 6676<br><br>John Robert Blakey,<br>*Judge.* |

**O R D E R**

Craig Harris, a 63-year-old African-American male, worked as a youth-development counselor at a juvenile detention center in Chicago. He was suspended from his job after he was found to have neglected allegedly required tasks during his shift. Because his discipline was more severe than the sanction imposed on another, younger, Caucasian female who had shared in the commission of the violation, Harris sued a variety of defendants alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, the Age Discrimination in Employment Act, 29

U.S.C. §§ 621–634, and the Illinois Human Rights Act, 775 ILCS 5/1–101 to 5/10–104. He claimed that the disparity in treatment resulted from impermissible discrimination based on his race, sex, and age. One of the defendants was the Office of the Chief Judge of the Circuit Court of Cook County; that Office oversees the juvenile detention center. The district court granted summary judgment for all defendants. It concluded that the difference in treatment was explained by Harris's more extensive disciplinary history, and that Harris had not submitted any evidence that would allow a trier of fact to conclude that the defendants' reasons for their action were pretextual. We affirm.

## I

Harris's claim of discrimination arises from an incident that took place while he was working at the Cook County Juvenile Temporary Detention Center. One night in early July 2012, Harris was supervising residents on an overnight shift with another youth-development specialist, Laura Terpstra, a Caucasian woman who was 34 at the time. Their duties included checking on residents every 15 minutes and recording that the checks were completed. Harris and Terpstra decided to take turns checking the residents. Terpstra agreed to take care of the last six checks of the night, but she forgot to log time entries for two residents. Although Terpstra took responsibility for the missing entries, the Center decided to hold a disciplinary hearing for both Terpstra and Harris because each was individually responsible for making sure the checks were completed *and* recorded. After the hearing Harris received a 25-day suspension, while Terpstra was suspended for just a single day.

Harris sued the Office of the Chief Judge of the Circuit Court of Cook County, which runs the detention center; Earl Dunlap, the facility's Transitional Administrator at the time; and Dunlap's office. He relied on the theories we mentioned earlier. He has also indicated that he suspects that the discipline he received was part of a broader campaign on Dunlap's part to harass the facility's unionized staff, because Dunlap had been blocked from firing them. There is no evidence of such an ulterior motive, however, and it is irrelevant to the issues before us.

After discovery the defendants moved for summary judgment, arguing that the facility's progressive-discipline policy and the two employees' disciplinary histories justified the differences between their respective punishments. According to the defendants, even though Terpstra took responsibility for conducting the resident checks, Harris violated facility policy by failing to ensure that she completed them. As explained by William Steward, a "Supervisor In Charge" at the facility at the time, "[n]o employee may delegate to another employee the responsibility for ensuring that the confined residents are visually checked every 15 minutes and that those visual checks

are properly documented." Such a delegation, Steward continued, "does not relieve any employee from the obligation of ensuring that the visual checks and the documentation thereof are completed." Bruce Berger, who was a Deputy Transitional Administrator at the time, presided over the disciplinary hearing for Harris and Terpstra. Berger asserted that the disparity in punishment was based on Harris's "extensive" history of infractions. Before the incident in July 2012, Harris had been disciplined on several occasions—twice for problems associated with the requirement to check in on residents every 15 minutes—and had received a verbal warning, "supervisory coaching," a 7-day suspension, and a 20-day suspension. Terpstra, in contrast, had not previously violated facility policy, according to Berger's review of her record. Given the progressive-discipline policy, Berger said, he was obligated to recommend a suspension of more than 20 days for Harris.

In response to the defendants' summary-judgment motion, Harris attempted to show that he had not violated any policy. In his view employees were permitted to divide up their responsibilities, he and Terpstra had done so, and Terpstra had accepted fault. Harris testified that it was common for the staff to divide their responsibilities on a shift and that no supervisor had ever told him that he could not do so. He also said that his union steward told him about instances in which other employees were not punished when a shift partner took responsibility for failing to complete a task. Terpstra agreed that dividing tasks was common practice and that supervisor approval was not required. Nevertheless, both Terpstra and Harris admitted that their tasks on a shift were joint responsibilities.

Even if there had been a violation, Harris continued, the Center had unjustifiably treated him differently from Terpstra and other similarly situated employees. Harris offered Terpstra's testimony that employees were not always disciplined for incomplete logs, though she could not remember any specific time when someone avoided discipline. Harris also attempted to contest the defendants' explanation for the disparity in his and Terpstra's treatment by presenting her testimony that, contrary to Berger's statement, she had been disciplined once before and received "extended probation."

The district court granted summary judgment for the defendants, concluding that Harris had not presented any "direct" evidence of discrimination and, under the "indirect method," a reasonable fact-finder applying the burden-shifting framework described in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), could not conclude that Harris had established a prima facie case of discrimination. (This court has since replaced the notion of two distinct methods of proof—the "direct" and "indirect"—with a more straight-forward inquiry: "whether the evidence would permit

a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).) Under either *Ortiz* or the earlier methodology, Harris bore the initial burden to produce evidence supporting his claims. Under the approach the district court used, that evidence had to support a finding that (1) he is a member of a protected class, (2) he was meeting the defendant's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of his protected class were treated more favorably. See *McDonnell Douglas*, 411 U.S. at 802; *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016).

Focusing on the fourth element, the court reasoned that Harris had not presented evidence that a similarly situated employee was treated more favorably than he had been. Terpstra, it observed, was not comparable in all material aspects to Harris, given her less serious disciplinary history. Nor had Harris identified other employees who either were not punished as severely for failing to complete and document the resident checks or were able to avoid punishment when a shift partner took responsibility for those errors.

Even if Harris could have established a prima facie case, the court continued, he did not present evidence of pretext sufficient to discredit the defendants' stated reasons for the 25-day suspension—Harris's failure to ensure that the checks were completed and documented and his lack of authority to delegate this responsibility to another employee. Harris based his argument on the defendants' purportedly evasive litigation conduct, but this conduct, the court thought, said nothing about the validity of their reasons for suspending him.

## II

On appeal Harris maintains that there is a dispute of material fact with respect to the question whether he and Terpstra were similarly situated: Terpstra testified that, like Harris, she previously had been disciplined, while Berger said that the July 2012 incident was Terpstra's first violation of facility policies. Faced with this conflict, Harris argues, the district court erred by accepting Berger's account. Taking the evidence in the light most favorable to him, he contends, the court should have found that Terpstra's testimony that in the past she had received "extended probation" put this matter in dispute.

Even accepting Terpstra's statement as true, however, her disciplinary history and Harris's were still not similar enough to make them comparable. A similarly situated employee "need not be identical in every conceivable way" but "must be

directly comparable to the plaintiff in all material respects." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009)) (internal quotation marks omitted). "An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated." *Simpson*, 827 F.3d at 662; see also *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008). The district court was correct that Harris's disciplinary history was much more extensive than Terpstra's because she had at most one incident on her record (the extended probation), while Harris admitted that he had been disciplined several times, the most recent resulting in a 20-day suspension.

Harris next argues that the Center should not have placed such weight on their disciplinary histories, because he still was contesting his past infractions through a grievance process. But Berger testified that the progressive-discipline policy obliged him to consider Harris's past suspensions, and Harris did not present any evidence challenging the significance of those prior punishments to Berger's decision.

Harris also contends that he presented evidence showing that there is no policy against dividing responsibilities and thus that the facility treated him more harshly than similarly situated employees by punishing him for Terpstra's error. He argues that he created a dispute of fact by introducing testimony that dividing responsibilities was a common practice at the facility and that neither Terpstra nor he was ever told it was prohibited.

Other than this account of his and Terpstra's impressions, however, Harris offered no evidence to support a finding that the Center had authorized its employees to delegate this particular responsibility. Even if this was common practice, there is no evidence that Harris was also relieved of the obligation to confirm that his partner completed the tasks as promised. As the district court noted, Harris did not identify any similarly situated employee who was permitted to delegate a task to another and then avoid punishment when that task went uncompleted. He made only conclusory statements, based on hearsay, that a union steward had told him that other employees were not disciplined in similar situations. Such vague statements are not enough to defeat summary judgment. See *Simpson*, 827 F.3d at 662. Similarly, although Terpstra asserted that employees were not always disciplined for incomplete logs, she could not recall any specific details that would have allowed a factfinder to conclude that the other employees were similarly situated to Harris.

Finally Harris contends that the defendants' reasons for disciplining him were pretextual because they were evasive throughout the litigation. But the district court

correctly noted that the defendants' litigation conduct, even if evasive, says nothing about the authenticity of their stated reasons for disciplining him.

Because Harris did not provide evidence that a similarly situated person was treated more favorably or that the defendants' stated reasons for punishing him were pretextual, a fact-finder could not reasonably have ruled in his favor on any of his claims. We therefore AFFIRM the judgment of the district court.