In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-2614

LILY ABEBE,

*Plaintiff-Appellant,*

*v.*

HEALTH AND HOSPITAL CORPORATION
OF MARION COUNTY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 20-cv-148 — **James R. Sweeney II**, *Judge.*

———————————

ARGUED APRIL 7, 2022 — DECIDED MAY 31, 2022

———————————

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Lily Abebe, a Black woman of Ethi-
opian origin, began working as a dental assistant at the Health
and Hospital Corporation of Marion County, known as Es-
kenazi Health, in 2014. In 2018, she received a low rating in
her performance review that resulted in her not receiving a
merit-based raise. Abebe then contacted the Equal Employ-
ment Opportunity Commission ("EEOC") and alleged race-

and national origin-based discrimination. According to Abebe, Eskenazi Health placed her on a Performance Improvement Plan later that month because of her contact with the EEOC. Abebe sued her employer, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The district court granted summary judgment for Eskenazi Health. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Plaintiff Lily Abebe is a Black woman of Ethiopian origin. In 2014, she began working for Eskenazi Health's Grassy Creek Dental Clinic as an "expanded function" dental assistant, meaning that she was trained in filling cavities.

Employees at the clinic would receive an annual performance review containing three metrics: "Eskenazi Health's Values," which assesses an employee's professionalism, respect, innovation, development, and excellence; job competency; and operational goals. Under each metric are several sub-metrics, which are rated from 0 (unsatisfactory) to 4 (outstanding).

Abebe has had a record of behavior issues throughout her employment. In Abebe's 2015 performance review, the clinic manager gave her a total weighted average of 2.0, noting that she had "made great strides in her career growth this year." The next year, in 2016, Abebe received an average of 2.27. The clinic manager gave her a score of 1 under the sub-metric for "respect," noting that "outside concerns or problems" can sometimes "chang[e] her attitude and affect[] her interaction with co-workers" and resolving to "encourage her to work on her personal issues that are affecting her interaction with co-

workers." In 2017, Abebe received an average of 2.22. She had been disciplined earlier that year for an argument with a coworker. In her performance review, the clinic manager gave Abebe a score of 2 under "professionalism" and noted that, "when she gets upset, her attitude turns to shocking," and that she "needs to balance her personality out and not react so much to negative events or pressure that affects her interaction with co-workers." The clinic manager also rated Abebe a 1 under "respect," referencing the argument with the coworker, which "resulted [in] many of Lily's coworkers seeing her as unapproachable." Elsewhere in the review, the clinic manager continued to note Abebe's attitude and her trouble cooperating with coworkers.

Abebe's 2018 performance review is at issue in this case, because it led to Abebe not receiving a merit-based raise. The parties discuss three incidents that occurred prior to Abebe receiving her performance review for 2018.

First, in March 2018, Abebe believed that a white dental hygienist purposely left out an open needle for Abebe to clean up. After the hygienist had stopped working at the clinic, Abebe requested a copy of the incident report from a supervisor by email, but the supervisor questioned why she wanted the report and wrote that "we need to be careful with the choice of words we use such as accusing [the hygienist of] leaving the open needle intentionally." Later, at a meeting with the clinic manager, Carlos Hernandez, and the dental director, Abebe again requested the incident report, but Hernandez was "persistent" that Abebe should stop asking for the report because providing it would "only open[] up a can of worms." The dental director agreed that Abebe should not worry about the incident because the hygienist was gone

anyway.

Second, Abebe experienced personal problems with a dentist, Dr. Raquel Salvador, throughout 2018. Abebe claimed that Dr. Salvador had pushed and communicated rudely with multiple people, including her. In December 2018, Abebe emailed Hernandez, the dental director, and the site coordinator to report that Dr. Salvador had been "very rude" to her that morning because of how Abebe was registering patients and had "screamed" at Abebe to bring a patient back for treatment.

Third, in March 2019, Abebe contested a protocol for checking out dental burs (a tool used for filling cavities), alleging that Daisy Sierra, the only other expanded function dental assistant, had better access to the dental burs because the burs were located in her office.

On March 29, 2019, Abebe met with Hernandez, the clinic manager at the time, to discuss her performance in 2018. In her 2018 review, Abebe received her lowest total weighted average—1.43. Hernandez described Abebe's communication and teamwork issues. Under "professionalism," for example, Hernandez gave Abebe a 1 and noted that she needed to "improve the way [she] approached other team members and solve conflict the proper ways without becom[ing] personal to others." Hernandez also rated Abebe a 1 under "respect," noting that she was "still developing communication skills with the team to … resolve day to day issues." Overall, Hernandez remarked that Abebe was "still developing communication and team work skills" and recommended "developing better professional relations with the team" and "addressing issues properly [in] a respectful[] manner to others."

At the March 29 meeting, Abebe asked for the basis of her low scores in many of the metrics. Hernandez explained to Abebe that she had experienced conflict with multiple team members and needed to continue developing her conflict resolution skills. Specifically, "the way she complained about the needle incident and her interaction with Dr. Salvador—using a disrespectful and angry tone, gossiping, and making repeated accusations even after matters were addressed by management—were examples of an ongoing problem." After this meeting, Abebe sent multiple emails requesting a meeting with supervisors, an HR staffer, and union employees regarding her performance review, taking issue with the fact that Hernandez had raised the needle incident at the March 29 meeting.

In 2019, Eskenazi Health announced merit-based pay raises based on employees' performance in 2018. Employees who received a total weighted average of 2.0 or higher on their performance reviews were eligible for raises of about two percent. Because her average was too low, Abebe did not receive a raise.

Abebe contacted the EEOC in August 2019. She told an EEOC investigator about the needle incident, but the investigator advised Abebe that she had not identified discrimination based on membership in a protected class. In September, Abebe spoke with the investigator again. She alleged for the first time that she had experienced race- and national origin-based discrimination at work, citing the needle incident, the conflict with Dr. Salvador, and the dental burs incident. The investigator informed Abebe that there was likely no cause for further EEOC investigation. According to Abebe, Eskenazi Health placed her on a Performance Improvement Plan that

same month, after she spoke to the EEOC. The parties dispute whether the Plan was actually issued or merely discussed, though it appears to be undisputed that Abebe never received the written Plan. In any event, about a month later, Eskenazi Health ultimately decided not to impose the Performance Improvement Plan.

Based on these facts, Abebe sued Eskenazi Health under Title VII and § 1981, alleging that her employer (1) discriminated against her when it gave her low scores on her performance review resulting in her not receiving a merit-based raise, and (2) retaliated against her when it placed her on a Performance Improvement Plan after she reached out to the EEOC. Eskenazi Health filed a motion for summary judgment, which the district court granted. Abebe now appeals.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*, construing facts in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011). "Summary judgment is appropriate where the admissible evidence shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. P. 56(a), (c)). We discuss Abebe's discrimination and retaliation claims in turn.[1]

---

[1] Abebe brings her claims under Title VII and § 1981. Because the analysis for discrimination and retaliation is the same under both statutes, we address each set of claims together. *See Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996).

*A. Discrimination*

Abebe contends that Eskenazi Health discriminated against her based on her race and national origin.

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff in a Title VII race discrimination suit must first establish a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class, (2) she was meeting the employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016).

Once a *prima facie* case has been established, "the burden shift[s] to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)). At bottom, the question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Abebe cannot establish a *prima facie* case because she has not identified a proper comparator. "[T]he similarly-situated inquiry … asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012)

(quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)). Abebe contends that Richard Branham, a white male dental assistant, and Daisy Sierra, a Hispanic expanded function dental assistant, did not receive negative performance reviews despite being involved in similar incidents to Abebe—Branham also got into a physical altercation with Dr. Salvador, and Sierra was not subject to the same check-out protocol for dental burs. But Abebe focuses on the wrong features, precluding a *meaningful* comparison. Abebe received low scores on her performance review not because she was involved in these incidents, but because she addressed them in a confrontational way. Abebe adduces no evidence that either proposed comparator was similarly disrespectful or aggressive in communicating with their colleagues or with management. (In any event, the dental burs incident occurred in March 2019, so it could not have been relevant to Abebe's 2018 performance review.)

Eskenazi Health thus had a legitimate, non-discriminatory reason for Abebe's low performance review scores—her communication was "confrontational and not solution-oriented." Abebe argues that the record does not support this explanation. She points to emails she sent to others at Eskenazi Health in which she does not believe she behaved disrespectfully. But the fact that Abebe disagrees with her supervisor's assessment does not establish pretext. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (affirming summary judgment where plaintiff merely contended "that he did not have the communication issues that his supervisors saw as problematic" but did not offer any other evidence that employer's concerns were pretextual). Abebe also claims that she can establish pretext because the Performance Improvement Plan her employer placed her on was ultimately withdrawn, but that

does not necessarily show that Eskenazi Health had a shady reason for giving her a negative review earlier.

In short, Abebe cannot establish a *prima facie* case of discrimination, nor can she demonstrate that Eskenazi Health's reason for the low scores on her performance review was pretextual.

### B.  Retaliation

Abebe argues that Eskenazi Health retaliated against her by placing her on a Performance Improvement Plan after she contacted the EEOC about the alleged discrimination.

To survive summary judgment on her retaliation claims, Abebe must show evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Humphries*, 474 F.3d at 404 (citing *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003)). For purposes of retaliation, an adverse employment action is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

"Performance improvement plans, particularly minimally onerous ones … are not, without more, adverse employment actions." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011). Abebe's plan may have contained many burdensome requirements, but she never had to fulfill them; even assuming, as Abebe contends, that her employer actually issued the Performance Improvement Plan, the Plan was withdrawn after about a month. And even if Abebe had had to go through with the Plan, our precedent indicates that

it likely would not have been onerous enough to constitute a materially adverse action. *See, e.g.*, *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (finding that performance improvement plan was not an adverse action even though employee was required to submit daily and weekly schedules to her supervisors).

As to causation, suspicious timing alone is not enough to establish a causal connection between the adverse action and the protected activity. *Coleman*, 667 F.3d at 860. That is all Abebe can show here: her Performance Improvement Plan was issued less than a month after she complained to the EEOC. Yet Abebe maintains that other facts support a causal connection: Eskenazi Health ultimately dropped her Performance Improvement Plan, and she also has "meaningful comparator evidence." (Appellant's Br. at 19.) But, as explained above, the fact that the Plan was ultimately dropped does not necessarily shed light on Eskenazi Health's intent in issuing or planning to issue the Plan in the first place. And Abebe's comparators are improper for purposes of the retaliation analysis, too, because there is no evidence that either of them complained of unlawful discrimination.

Thus, Abebe fails to adduce sufficient evidence to establish a causal connection between her contact with the EEOC and the issuance of the Performance Improvement Plan, and she also cannot demonstrate that issuing the Plan was an adverse employment action.

### III. CONCLUSION

For these reasons, the district court's judgment is AF-FIRMED.