**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200142-U

Order filed February 25, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| DAVID L. GARNER, as the Executor of the Estate of FRANCES P. GARNER, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Iroquois County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Appeal No. 3-20-0142 Circuit No. 18-L-1 |
| DANIEL R. GARNER, | ) ) | Honorable James B. Kinzer, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Lytton and McDade concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The circuit court did not err in applying the burden of proof and (2) the circuit court did not err in granting summary judgment.

¶ 2    Plaintiff, David Garner, filed suit to recover property that included 80 acres of farmland he previously conveyed amid financial difficulties to his parents. David's mother, Frances Garner, conveyed all the property she owned, except for property in South Dakota, via quitclaim deed to defendant, Daniel Garner, David's brother. David claims the property was obtained by fraud, undue influence, and a breach of Daniel's fiduciary duty to Frances. Following discovery, David

filed a motion for summary judgment and Daniel responded in kind. The lower court found in favor of Daniel. David appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        David and Daniel Garner are the sons of William and Frances Garner. David, Daniel, and William farmed land together in Iroquois County. In 1993, David ran into financial difficulties resulting in litigation brought by multiple creditors. Due to those financial difficulties, David transferred 80 acres of land to William and Frances and subsequently filed for bankruptcy. David then moved out of state. Daniel remained, helping farm the family land. In the years that followed, William passed away. In July 2014, Frances conveyed the 80 acres of land and 3 single family-homes via a single quitclaim deed to Daniel. Frances passed away on March 27, 2017. Her cause of death was senile dementia.

¶ 5        David, as executor of the estate of Frances, filed a three-count complaint in January 2018 alleging financial exploitation of an elderly person pursuant to section 17-56 of the Criminal Code of 2012 (Code) (720 ILCS 5/17-56 (West 2018)), common law breach of fiduciary duty, while also seeking to set aside the transfer of the acreage and three single-family homes. Daniel filed a motion to dismiss the complaint (735 ILCS 5/2-615 (West 2018)), which the court granted, directing David to amend and replead the complaint. In April 2018, David filed his first amended complaint. The counts in the amended complaint mirrored those pled in the original. David claimed that Daniel forged Frances's signature on the deed, that he delivered and recorded the deed, or, in the alternative, he obtained the deed by telling Frances it was in her best interests to transfer the property along with "other false representations and promises." Discovery ensued.

¶ 6        Attorney Theodore Spenn was deposed in this matter. He prepared the quitclaim deed transferring the properties at issue. Spenn was familiar with Frances prior to preparing the

quitclaim deed. Spenn completed other work for Frances just two months prior. Frances told him that she wanted the 80 acres to go to Daniel. Frances indicated that she had provided substantial "help" to David. She believed David's financial difficulties remained an issue and that there were judgments against him making it unwise to transfer real estate to David. When specifically discussing the execution of the quitclaim deed, Spenn had no concerns that Frances was under any sort of undue influence from Daniel, nor were there any concerns about her mental capacity. If there were any concerns, Spenn would not have allowed Frances to sign the deed. He did not believe that Daniel was present when the deed was executed. Spenn explained the reason that he did not believe Daniel was present was due to a lack of notation to that effect. Spenn's practice when executing an instrument that preferred one family member over another when the family member was present, was to ask that individual to leave and discuss the situation with the client and then make a notation of that conversation. He believed Frances was aware of what she was doing and the impact of her actions. The deed was prepared at her request and was executed in front of a notary. Spenn recorded the deed himself. He could not recall any conversations with Daniel about the preparation or execution of the deed.

¶ 7        Jeanne Misner witnessed Frances sign the deed and then notarized the deed. She was also deposed in this matter. Misner was employed by Spenn at the time. She acknowledged that Frances was an elderly woman, but believed Frances knew what she was signing. Misner also opined that Frances wanted to sign the deed. She could not say for certain whether or not Daniel was present.

¶ 8        Daniel testified during his deposition that he was not present when the deed was executed. He had no involvement in the preparation of the deed. He only became aware that Frances executed a deed transferring the properties to him two days after it was signed. Frances did not have any discussions with him regarding the deed until after it was signed. Daniel did not have any

conversations with Spenn about the deed. He was surprised by his mother's decision to transfer the properties to him.

¶ 9        Dr. Albert Tanlim was Frances's primary physician. In his deposition testimony, he opined that a physician's assistant noted that Frances had suffered memory loss in 2013. He noted in March 2014, Frances was oriented to person, place, and time. Although she was being treated for dehydration, she was well nourished and well developed. Frances showed no signs that she was unsure who she was, when it was, or where she was. There were no concerns of cognitive problems related to dementia.

¶ 10       Tanlim examined Frances again in October 2014. She presented with acute bronchitis. She was again oriented to person, time, and place. There was no reference to dementia or other cognitive issues. An exam in June 2015 resulted in a diagnosis of hypertension, chronic kidney disease, anemia, and thyroid disorder. Tanlim noted Frances was alert and there was no mention of dementia or cognitive issues. In July 2015, a neurologist noted that Frances presented with metabolic encephalopathy, a urinary tract infection, and a history of mild dementia. When pressed on where the neurologist found this history of mild dementia, Tanlim was unable to identify in the medical records a source, as Frances had never been previously diagnosed with dementia. Instead, he pointed to the physician's assistant's note from 2013 documenting memory loss as the possible source. He explained that memory loss was a symptom of dementia, and that Frances likely had some form of dementia back in 2013. Tanlim admitted that the neurologist was, in fact, the first medical professional to make a diagnosis of dementia in 2015.

¶ 11       Tanlim could not express an opinion on Frances's mental capabilities when she signed the deed. He did opine that dementia is a progressive disease that can take anywhere from three to eight years to result in death. While Tanlim could not express an opinion on Frances's mental

capabilities at the time the deed was executed, he suspected that in 2015, she would have been suffering from moderate dementia. Given the progressive nature of the disease, he could not say if Frances understood the details of the deed because he was not there.

¶ 12       David testified at his deposition that he lived in South Dakota in one of the multiple rental homes Frances purchased in the state. Prior to her death, David would collect rents from the properties and use the money to maintain them. He transferred the 80 acres to his mother and father to protect it from creditors. There was a lien on the property that his parents paid off. On occasion, he would send money back to Frances, but this was not a regular occurrence. After 1994, David had no involvement in farming the 80 acres or the family farming operation because "it was up to Dan to farm it then." David was unaware of a medical diagnosis of dementia prior to his mother's death. Although he alleged Daniel forged the deed, he had no witnesses that could testify to that fact and had not sought examination of the signature on the deed by a handwriting expert. He was aware that Frances was not receiving cash rent for the 80 acres back in 2014 but was unaware that she no longer held title. In 2016, Daniel told David that he had Frances transfer the property in order to protect her. When pressed to describe what misrepresentations Daniel made to Frances to obtain the property, he initially stated, "That he'd always be there and take care of her." Opposing counsel asked if that ended up being a correct statement. David answered yes. David then stated that "[Daniel's] representation was he procured her signature through forgery or whatever. He somehow forged it or got somebody else to forge it."

¶ 13       David filed a motion for summary judgment prompting Daniel to file a cross-motion for summary judgment. In his motion, David parroted the allegations in his complaint without adding any additional facts. Daniel argued David's allegations of misconduct were contradicted by the evidence. Daniel noted the absence of evidence supporting David's claim that the deed was

acquired by deception. Further, he asserted that Frances was never diagnosed by a medical professional with senile dementia prior to her signing the deed, rather it was only noted as her cause of death. Moreover, Daniel argued the unrebutted evidence showed that he did not exert any influence on Frances regarding the deed and did not deliver or record the deed. In sum, Daniel claimed he rebutted any presumption against him while David's claims were baseless.

¶ 14        Following arguments that are not preserved in the record before this court, the circuit court found that there were no genuine issues of material fact. There was no evidence that Daniel exerted undue influence over Frances or evidence of fraud. The court also found there was a lack of evidence that Frances was incompetent at the time the deed was signed. Accordingly, the lower court granted summary judgment in favor of Daniel.

¶ 15        David appeals.

¶ 16        <center>II. ANALYSIS</center>

¶ 17        David asserts that in granting summary judgment in favor of Daniel, the lower court erred in applying the burden of proof. He goes on to argue that he established Frances was suffering from dementia since at least March 2013 based on deposition testimony of Tanlim. David also argues Daniel committed a *per se* violation of the Code and failed to rebut the presumption that the transfer of land was fraudulent.

¶ 18        Daniel argues he rebutted the presumption, David failed to provide a factual basis supporting his claims, and the independent actions of Frances do not constitute a breach of fiduciary duty by him.

¶ 19        "Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, evidence there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wells Fargo Bank, N.A. v.*

*Coghlan*, 2021 IL App (3d) 190701, ¶ 23 (citing 735 ILCS 5/2-1005(c) (West 2014)). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. The summary judgment stage is the "put up or shut up" moment in a suit, and the nonmoving party must present some factual basis to support his or her claim. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14; *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 20    When examining a grant of summary judgment, this court considers the facts and law related to the case anew to discern whether the lower court's disposition of the matter was appropriate. *Jackson v. Graham*, 323 Ill. App. 3d 766, 779 (2001). This court reviews the trial court's judgment, not its reasoning, and may affirm that judgment on any grounds called for in the record. *City of Chicago v. Holland*, 206 Ill. 2d 480, 492 (2003). We review a grant of summary judgment *de novo*. *Id.* at 487.

¶ 21    David relies on both the presumption of fraud and undue influence in combination with the allegation of a violation of the Code in asserting error below. The presumption of fraud or undue influence attaches where a fiduciary relationship between the parties exists and the fiduciary has benefitted by virtue of his fiduciary status. *In the Matter of the Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088 (1997). The evidence required to rebut the presumption is not fixed, instead, it depends on the circumstances of the case. *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 460 (1983). A fiduciary relationship may exist (1) as a matter of law from the relationship of the parties, such as an attorney-client relationship or (2) based on the facts of a particular situation, such as a relationship where trust is reposed on one side and results in superiority and

- 7 -

influence on the other side. *In re Estate of Elias*, 408 Ill. App. 3d 301, 319 (2011). One who holds a power of attorney is a fiduciary as a matter of law. *DeJarnette*, 286 Ill. App. 3d at 1088.

¶ 22 Daniel stood as a fiduciary in relation to Frances. Nonetheless, we conclude that the pleadings, depositions, admissions, and affidavits on file in this case show that Frances executed the quitclaim deed of her own free will without any input from Daniel. The deposition testimony in this matter serves to rebut the presumption relied on by David. The evidence shows the deed was prepared at the direction of Frances. Those present at the time the deed was executed did not have any misgivings about Frances's mental capabilities or that she was under the influence of another. She articulated her reasoning for giving the property to Daniel and not David. Those who witnessed the execution of the deed could not remember Daniel being present. Daniel stated he was unaware of the transaction until it was completed. Accordingly, there is sufficient evidence to rebut the presumption.

¶ 23 We are unable to divine David's exact argument from his inartful briefing, but it appears that he operates under the misconception that the presumption itself served to either shift the burden of proof or served as evidence of his claim. Regardless, it is well-settled that once evidence contrary to the presumption is introduced, the presumption ceases. *Franciscan Sisters*, 95 Ill. 2d at 460. The presumption does not shift the burden of proof, as the burden "remains with the party who initially had the benefit of the presumption." *Id.* at 461.

¶ 24 After Daniel provided sufficient evidence to rebut the presumption of undue influence and fraud, David was required to prove that Daniel violated the Code. Specifically, the Code provides:

"A person commits financial exploitation of an elderly person or a person with a disability when he or she stands in a position of trust or confidence

- 8 -

with the elderly person or a person with a disability and he or she knowingly:

> (1) by deception or intimidation obtains control over the property of an elderly person or a person with a disability; or

> (2) illegally uses the assets or resources of an elderly person or a person with a disability.

* * *

A civil cause of action exists for financial exploitation of an elderly person or a person with a disability as described in subsection (a) of this Section. *** In a civil action under this subsection, the burden of proof that the defendant committed financial exploitation of an elderly person or a person with a disability as described in subsection (a) of this Section shall be by a preponderance of the evidence." 720 ILCS 5/17-56(a), (g) (West 2020).

¶ 25    While Daniel put forth sufficient evidence to rebut the presumption, David failed to put forth even a scintilla of evidence that supports his claims. We are unable to find any evidence in the record that supports the allegation that Daniel obtained control over the properties at issue by deception or intimidation, or, more specifically, "forgery or whatever." Moreover, there is an absence of evidence that shows Daniel engaged in any knowing act to obtain control of the properties. Frances appears to be the moving party in the transfer while there is no evidence that Daniel sought to induce her into the transfer. See *Jones v. Washington*, 412 Ill. 436, 442 (1952).

¶ 26    While the trial court was required to view the pleadings in the light most favorable to the nonmoving party, this did not preclude the court from drawing reasonable inferences in favor of Daniel since both David and Daniel moved for summary judgment. *In re Estate of Frakes*, 2020

IL App (3d) 180649, ¶ 24. Further, David relies merely on speculation, opinion, and unsupported conclusions in order to support his claim of malfeasance on the part of his brother. This is insufficient. See *Sorce*, 309 Ill. App. 3d at 328. There is evidence in the record supporting the conclusion Daniel requested the lower court to reach while there is none that favors the conclusion David advances. In the put up or shut up moment of the case, David failed to produce a factual basis to support his claim.

¶ 27        David also argues there was a *per se* violation of the Code and consent is not a defense. We reject this contention. The statute provides that "[c]onsent is not a defense to financial exploitation of an elderly person or a person with a disability *if* the accused knew or had reason to know that the elderly person or a person with a disability lacked capacity to consent." (Emphasis added.) 720 ILCS 5/17-56(f) (West 2020). In this vein, David asserts he "proved" Frances suffered from dementia as early as 2013. We disagree. The deposition testimony does not establish a definitive diagnosis of dementia prior to the transfer of the properties. Further, David fails to argue how Frances's alleged dementia impacted her capacity to convey and fails to allege Daniel's knowledge of the disability or why he should have reasonably known of the disability. See *Kelly v. Nusbaum*, 244 Ill. 158, 165 (1910) (citing collected cases) (finding even if a grantor is impaired by disease incident to old age, a deed is valid if the grantor is capable of transacting ordinary busines, understands the nature of the business in which they engage, the effect of what is being done, and can exercise his or her will with reference to those matters).

¶ 28        Turning to David's common law breach of fiduciary duty claim, to sustain such a claim, it must be alleged and ultimately proved that: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. It is the plaintiff's

- 10 -

burden to establish a fiduciary duty on the part of the defendant, the defendant's breach of that duty, and damages that were proximately caused by the defendant's breach. *Neade v. Portes*, 193 Ill. 2d 433, 444 (2000).

¶ 29    Similar to David's statutory claim, Daniel rebutted the same presumption that applied to the common law claim and thereafter David failed to advance any evidence supporting his claim that Daniel breached his fiduciary duty to Frances.

¶ 30    David's argument that the lower court erred in applying the law to this matter also fails. We are unable to say that the lower court erred in applying the burden of proof in this matter. As explained above, the burden always remained with David to prove that Daniel knowingly engaged in an act of fraud or deception to obtain control of the properties or somehow breached his fiduciary duty. It is also important to note that there is no report of proceedings for this matter. In this court, David has the burden to present a sufficient record to support claims of error by the circuit court. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such support, we presume the order entered below was in conformity with the law and based on a sufficient factual basis. *Id.* There is nothing in the record that supports the contention that the lower court misapplied the burden of proof.

¶ 31    In his reply brief, David appears to argue that there are genuine issues of material fact that preclude the grant of summary judgment. If David wished to argue genuine issues of material fact prevented summary judgment, it was a strategic misstep to file for summary judgment. See *Oswald v. Hamer*, 2018 IL 122203, ¶ 9 ("When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved as a matter of law."). Despite David's misstep, we have an independent duty to determine if a genuine issue of material fact exists. *Frakes*, 2020 IL App (3d) 180649, ¶ 20. Nonetheless, David

raises this argument for the first time on appeal in his reply brief and as a result, this argument is waived. See *People v. English*, 2011 IL App (3d) 100764, ¶ 22 (quoting *Holliday v. Shepherd*, 269 Ill. 429, 436 (1915)) (" 'A contrary practice would permit appellants to argue questions in their reply briefs as to which counsel for appellees would have no opportunity to reply.' "). Even if not waived, there is no support in the record that there are genuine issues of material fact precluding summary judgment.

¶ 32       During oral argument, counsel for David argued that there could be a contest concerning whether the deed was forged and that evidence on this issue could be submitted at trial. Counsel is correct, there *could* have been a contest on this issue had he pursued the issue to either a trial or an evidentiary hearing to put on evidence supporting his theory. He did not. Rather, he moved for summary judgment.

¶ 33       Accordingly, the circuit court did not err.

¶ 34                                III. CONCLUSION

¶ 35       For the foregoing reasons, we affirm the judgment of the circuit court of Iroquois County.

¶ 36       Affirmed.